**Michael WEINRIB, M.D. and Louisa Weinrib, Plaintiffs,**

v.

**MONTGOMERY COUNTY BOARD OF EDUCATION, Defendant.**

**Civ. A. No. 88–T–1285–N.**

United States District Court, M.D. Alabama, N.D.

March 12, 1990.

Dennis Bailey, Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for plaintiffs.

Vaughn Hill Robison, John M. Bolton, III, Robison & Belser, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

The issue presented in this lawsuit, brought by two voters against the Montgomery County Board of Education, is a novel one: whether a voting arrangement adopted by the school board, which provides that one of the school board's single-member districts is to be represented temporarily by two persons, each with a half vote, violates the "one-person-one-vote requirement" of the fourteenth amendment to the United States Constitution. For reasons that follow, the court concludes that the voting arrangement does not violate this constitutional requirement.

## I. BACKGROUND

This lawsuit is rooted in the massive *Dillard* litigation, which was brought back in 1985 by a group of African–American voters in Alabama, charging that the at-large systems used to elect city, county, and school board officials across the state violated § 2 et seq. of the Voting Rights Act of 1965, as amended.[1] The Montgomery County Board of Education was one of those sued. In 1988, the *Dillard* plaintiffs and the school board reached an agreement replacing the school board's at-large sys-

---

1. 42 U.S.C.A. § 1973 et seq. The history of the *Dillard* litigation is discussed in some detail in *Dillard v. Baldwin County Board of Education,* 686 F.Supp. 1459 (M.D.Ala.1988).

tem with a single-member districting plan. The court approved the agreement and ordered it enforced with the 1988 elections.[2]

The settlement agreement provided for seven single-member districts. Three of the districts drawn under the agreement are majority-black, with black populations ranging from 69 to 88% of the total populations. A fourth district allows for black "influence," with a 30% black population. The agreement also contained two other significant provisions: first, those board members whose terms did not expire in 1988 would be permitted to serve out their terms; and, second, each district would have only one vote on the board. The Montgomery County School Board's effort to comply with these two latter provisions has given rise to this lawsuit.

The districting scheme under the agreement resulted in Sandie Barnett and Nellie Weil, two board members with unexpired terms, being placed in the same district, District 7.[3] Barnett's and Weil's terms will not expire until 1992. Because the settlement agreement required that board members be allowed to complete their terms and because the agreement provided that no district could have more than one vote, the school board was left with two members but only one vote for District 7. The school board responded to this problem with a temporary measure giving Barnett and Weil a half vote each. The measure, which was unanimously adopted by the board, further provides that in the "absence of either from a meeting, the repre-

sentative who was present will cast the vote."[4]

Two voters in District 7, Michael and Louisa Weinrib, then filed this lawsuit against the Montgomery County School Board.[5]

## II. DISCUSSION

In this lawsuit, the Weinribs argue that the method chosen by the school board to address the problem of having two members from District 7 violates the one-person-one-vote principle now embodied in the equal protection clause of the fourteenth amendment to the United States Constitution. The substance of their argument is that, each time Barnett and Weil cast conflicting votes on an issue, they will have effectively cancelled out each other's vote, with the result that voters from District 7 will have been denied the power to affect the board's decision on that issue; voters from the other six districts, the Weinribs argue, are not subject to a similar diminution of their influence on the board. The Weinribs further argue that there were, and still are, other choices available to the board that would not have had a similar adverse effect on the voters of District 7.[6]

### A.

The Weinribs and the school board both acknowledge that the constitutional doctrine, now known in short form as "the one-person-one-vote" principle, requires that "the vote of any citizen is [to be] approximately equal in weight to that of

---

2. Before approving the agreement, the court conducted a fairness hearing in which black voters of Montgomery County were allowed to present any objections that they might have. Fed.R.Civ.P. 23(e).

   The agreement was also "precleared" by the United States Justice Department pursuant to § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973c.

3. Board members from Districts 1 and 6 also had unexpired terms. Only Districts 2, 3, 4, and 5 elected members in 1988.

4. Weil and Barnett were the primary movers behind the half-vote solution. Weil moved for its adoption by the board, and Barnett seconded her motion.

5. The Weinribs previously sought to intervene in the *Dillard* litigation to complain that there was a possibility that the school board would adopt the shared-vote method as a solution to the problem posed by the settlement. This court found the Weinribs' concern to be premature, and denied intervention. Now that the board has in fact done what they thought it would do, their concern is no longer premature.

6. District 7 is not one of the majority-black districts, and it is not the district with the significant black "influence." There is therefore no issue of diminution of the black vote.

any other citizen." *Reynolds v. Sims,* 377 U.S. 533, 579, 84 S.Ct. 1362, 1390, 12 L.Ed.2d 506 (1964). In practice, this means that, when members of an elected body are chosen from separate districts, each district must have the same population as far as is practicable. The Weinribs and the school board further agree that, although the principle applies to local elections, *Avery v. Midland County,* 390 U.S. 474, 479–81, 88 S.Ct. 1114, 1117–18, 20 L.Ed.2d 45 (1968), the school board's districting scheme does not violate the principle to the extent it requires that all voting districts have equal populations. The Weinribs' argument is therefore not population-based, with a focus solely on the opportunity of voters to elect members of the school board. Instead, the thrust of their argument is more qualitative and theoretical: that the voters of District 7 have less influence on board matters than do voters from other districts.

Recently, in *Board of Estimate of City of New York v. Morris,* 489 U.S. 688, ——, 109 S.Ct. 1433, 1437, 103 L.Ed.2d 717 (1989), the Supreme Court held that whether a voter has equal power to affect the outcome of a board vote did not fall within the inquiry of the one-person-one-vote principle. There, a local governing board attempted to deflect an equal protection challenge to its districting scheme by arguing that, although its scheme included districts with wide variances in population, the differences among the districts with regard to the power of voters to affect the outcome of decisions at board meetings were not as great. The Supreme Court rejected this argument with the statement that "the population-based approach of our cases ... should not be put aside." *Id.* at ——, 109 S.Ct. at 1440. The Court explained that, although "It may be that in terms of assuring fair and effective representation, the equal protection approach reflected in the *Reynolds v. Sims* line of cases is itself imperfect," the approach should not be expanded "to inquire whether, in terms of how the legislature actually works in practice, the districts have equal power to affect a legislative outcome." *Id.* In other words, according to *Morris,* an election scheme which does not allow for equal opportunity to affect the outcome of board votes would still comply with the one-person-one-vote requirement as long as it provides for equal-population districts. The sole focus of the one-person-one-vote concept is whether all districts with one vote have the same population as far as is practicable.[7]

To be sure, in *Morris,* the local governing body suggested that the Supreme Court focus on voter power to affect the outcome of board decisions, in an effort to show that its districting scheme was *not* constitutionally infirm; whereas here, the Weinribs are proffering the approach in order to show that a scheme *is* infirm. The difference is immaterial. Whether the voters of a district have more or less power than voters in other districts to influence the outcome of board decisions is simply not the yard stick by which to measure whether a districting scheme violates the one-person-one-vote principle.

Indeed, in *Whitcomb v. Chavis,* 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971), the Supreme Court was asked to take an approach similar to that advanced by the Weinribs. There, the plaintiffs challenged a districting scheme, claiming that it violated the equal protection clause because it included both multi-member and single-member districts. The plaintiffs asked that the Court focus not only on the population variances between the districts but also on the differences in the ability of the voters in the districts to influence votes on legislative matters. With regard to the latter, the plaintiffs argued that multi-member districts had more influence than single-member districts because, as the

---

7. In the decision which the Supreme Court affirmed in *Morris,* the Second Circuit similarly reasoned that the population-based approach that the Supreme Court had taken in one-person-one-vote cases "is not itself flawless" and "is imperfect because it too must make assumptions that do not mirror reality." *Morris v.* *Board of Estimate,* 831 F.2d 384, 391 (2nd Cir. 1987). The appellate court nevertheless refused to augment the approach with an inquiry into a voter's power over the outcome of board decisions. The court wrote that "voter power over outcome is irrelevant to equal protection analysis." *Id.* at 389 n. 5.

Court described the plaintiffs' argument, "since multi-member delegations are elected at large and represent the voters of the entire district, they tend to vote as a bloc, which is tantamount to the district having one representative with several votes." *Id.* at 146, 91 S.Ct. at 1870. The plaintiffs' argument was premised on the notion that one representative with several votes was more powerful, or influential, than several representatives with one vote each. The Supreme Court refused to enter the theoretical quagmire posed by an argument based on such a premise, and held that "We are not ready ... to agree that multi-member districts ... overrepresent their voters as compared with voters in single-member districts, even if the multi-member delegation tends to bloc voting." *Id.* at 147, 91 S.Ct. at 1871.

A similar premise is at the heart of the Weinribs' claim in this lawsuit: that one representative with one vote is more powerful than two representatives with half votes. This court, as did the Supreme Court in *Morris*, refuses to rely on such a theoretical premise, which as explained below may or may not have a footing in reality; this court cannot agree that a representative with one vote is necessarily more influential than two representatives with a half vote each.

### B.

It is apparent that, in rejecting an expansion of its equal protection approach to include attempting to measure voter ability to affect the outcome of board decisions, the *Morris* Court was greatly influenced by the feasibility of the broadened approach. The Supreme Court wrote that the approach would be "a difficult and ever-changing task," which could "hardly [be] met by a mathematical calculation." 489 U.S. at ——, 109 S.Ct. at 1440. The Court stated that the approach would have to take into account a myriad of political and other factors, "which might include party affiliation, race, previous voting character-

istics or any other factors which go into the entire political voting situation." *Id., quoting Whitcomb*, 403 U.S. at 145–46, 91 S.Ct. at 1870.

This difficulty is dramatically demonstrated by the record before this court. On the one hand, the Weinribs argue that the solution adopted by the school board dilutes the power of District 7 voters to influence the outcome of board decisions. They have submitted evidence that in the past the two board members from District 7 have cast conflicting votes 15% of the time overall and 30% of the time over "matters of substance."[8] The Weinribs maintain, based on this evidence, that in the future the voters of District 7 will have their ability to influence board decisions diluted to this degree. They further note, in support of this contention, that, since the two district members were restricted to a half vote each, they have cast conflicting votes at least 16 times, including on the issues of the election of the chairperson and the vice-chairperson of the board. The Weinribs contend that there are a number of other methods which would not be as detrimental to their so-called right to equality of influence on board decisions. Their suggested methods include:

1. Designating Barnett or Weil "member-at-large and rotating the member-at-large among all seven districts to share one/half vote with all the district representatives for an equal length of time.
2. Making Barnett or Weil a non-voting chairperson except in the case of a tie.[9]
3. Alternating the non-voting membership between all the members of the Board on an equal basis.
4. Requiring Barnett and Weil to cast one full vote for District seven or to vote on an alternating basis so that the vote will not be split.

Plaintiffs' brief, pp. 2–3. They admit, however, that their suggestions are far from perfect and have some significant drawbacks.

The school board has responded in a number of ways. First, the board argues that board members with whole votes can

---

8. Plaintiffs' brief, p. 2.

9. Although the Weinribs have suggested this method, they strongly oppose it as beyond the power of the court to order.

also complain that their votes have been cancelled out, because any time two board members with whole votes cast conflicting votes their votes are in effect cancelled out. The board has also submitted evidence that, on the occasions where the two District 7 members cast conflicting votes, their votes would not have made any difference in the outcome of the board decision had they voted the same. But most importantly, the board observes that the two representatives from District 7 rejected the Weinribs' suggested solutions, and voted instead with the other board members to adopt a plan in which they would share a vote. The District 7 members apparently believed that the plan adopted by the board was better for themselves and those within their district than any of the methods offered by the Weinribs. Their view is surely entitled to significant deference. They have first-hand knowledge of the complex dynamics of how the board works and, in particular, of how to influence and win board decisions; they are therefore in the best position to know what method would offer them the best opportunity to serve their constituency.[10] Admittedly, the two members may have been motivated in part by a selfish desire to continue on the board as representatives of District 7, but the court cannot say that they were not also motivated by the interests of their constituency since they will both be held accountable for their actions when they run for reelection in 1992.[11]

10. In fact, Barnett and Weil may have been of the opinion that each time one of them votes to "cancel out" the other's vote, she is influencing the board decision. They may further believe that, within the dynamics of board politics, they can each use this influence not only to defeat what they oppose but to get what they want.

11. The court agrees with the Weinribs that, if the school board's solution violates the one-person-one-vote principle, the fact that the two District 7 members voted for it cannot save it. However, the fact they voted for, and supported, the board's solution is still relevant. Whether the solution violates the one-person-one-vote principle, as the Weinribs would define the principle, would include a most complex and subjective inquiry into the workings of the school board, which inquiry would by its nature require input from those directly involved with the board.

It is apparent from the above that there is some merit in the position of the Weinribs as well as in that of the school board, and that any solution which the board, or even this court, might come up with within the constraints of the settlement in the *Dillard* case would have some significant potential drawbacks. It is also apparent, however, that the school board—and, in particular, the two representatives from District 7—is in the best position to determine which voting arrangement from among the imperfect ones available would "best" serve the voters of District 7.[12] If the board has misjudged, the remedy lies elsewhere, including in the political process.[13]

## III. CONCLUSION

In conclusion, the temporary measure adopted by the Montgomery County School Board to address the problem presented by the agreement in *Dillard* clearly raises at least an appearance of unfairness. The voters of District 7 are being treated differently from all other voters in Montgomery County, and this fact alone justifies a feeling among all voters of the county that not all is fair. Indeed, it is apparent that the school board shares this feeling in as much as it has adopted this method on a temporary basis only. Nevertheless, the law of the highest court of this land appears to be clear that, while the method chosen by the school board may not be perfect, it does not

12. In *Morris*, a *methodology* was suggested for determining "an individual voter's power to affect the outcome of a board vote." *Id.* at ——, 109 S.Ct. at 1439–40. The method, called the Banzhaf Index, "first calculates the power of each member of the board to affect a board vote, and then calculates voters' power to cast the determining vote in the election of that member." *Id.*

Here, the Weinribs have not even sought to offer a methodology, or the guidance of experts, to assist the court in determining whether their power as voters to affect the outcome of board decisions has been diluted.

13. The court has not addressed whether the shared-vote arrangement violates state law or some other federal constitutional or statutory provision.

violate the one-person-one-vote requirement of the equal protection clause of the fourteenth amendment.

An appropriate judgment will be entered.

JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that judgment be and it is hereby entered in favor of defendant Montgomery County Board of Education and against plaintiffs Michael Weinrib and Louisa Weinrib, and that the Weinrib plaintiffs are denied all relief sought.

It is further ORDERED that costs be and they are hereby taxed against the Weinrib plaintiffs, for which execution may issue.